IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff/Respondent,<br><br>vs.<br><br>Richard Steven Reiss,<br><br>    Defendant/Movant. | CR 08-0723-PHX-SRB<br><br>CV 10-2330-PHX-SRB (ECV)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

Pending before the court is Movant's *pro se* Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. Doc. 1.[1]

## BACKGROUND

On November 5, 2008, following a jury trial, the jury returned guilty verdicts on both counts alleged against Movant in the indictment. Doc. 61 of CR 08-0723-PHX-SRB. Count 1 alleged Perjury, in violation of 18 U.S.C. § 1621 and Count II alleged False Claim of Citizenship, in violation of 18 U.S.C. § 911. Id. The offenses occurred during a court proceeding before an Immigration Judge in October 2007 after Movant took an oath to testify truthfully. Doc. 7 of CR 08-0723-PHX-SRB. On February 13, 2009, Movant was sentenced

---

[1] Unless otherwise indicated, the cited docket numbers are from the civil case that was opened upon the filing of the motion to vacate.

to 24 months in prison on each count, the terms to run concurrently, and three years of supervised release. Doc. 91 of CR 08-0723-PHX-SRB.

On February 18, 2009, Movant filed a timely Notice of Appeal. Doc. 92 of CR 08-0723-PHX-SRB. On April 20, 2010, the Ninth Circuit Court of Appeals affirmed the district court's judgment. Doc. 139 of CR 08-0723-PHX-SRB. The Court explained that Movant's appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating there were no grounds for relief and requesting permission to withdraw. Id. The Court noted that Movant then filed a *pro se* supplemental brief. After conducting its own independent review of the record, the Court found no arguable grounds for relief on direct appeal. Id.

On October 28, 2010, Petitioner filed his motion to vacate pursuant to 28 U.S.C. § 2255. Doc. 1. He raises six grounds for relief in the motion, all alleging ineffective assistance of counsel in violation of the Sixth Amendment: (1) that his trial counsel failed to move to suppress items seized from Movant's vehicle; (2) that counsel should not have stipulated to the admission of four items seized from the vehicle; (3) that counsel failed to challenge Movant's arrest and detention by Immigration and Customs Enforcement ("ICE") officers in September 2007; (4) that counsel failed to challenge the Immigration Court's jurisdiction over Movant; (5) that counsel failed to challenge the significance of evidence showing no request for citizenship benefits; and (6) that counsel failed to present a handwriting expert at trial to rebut the government's expert. Respondent filed a Response in Opposition to Motion to Vacate on March 7, 2011. Doc. 8. Movant then filed a Reply on April 22, 2011. Doc. 16.

**DISCUSSION**

**A.    Ineffective Assistance of Counsel Legal Standard**

The two-prong test for ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-88.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. A defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citing Michael v. Louisiana, 350 U.S. 91, 101 (1955)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

**B. Application**

**1. Ground One**

Movant contends in ground one that his trial lawyer provided ineffective assistance when he failed to move to suppress items seized from his vehicle by police. Movant explains that his vehicle was searched at the time Dan Gannon was arrested for allegedly trying to cash a fraudulent check at a Cash One store on Bell Road in Phoenix. Phoenix police detective Earl Fisher saw Mr. Gannon driving the vehicle in the parking lot before he parked it and went into Cash One. When officers arrested Gannon inside the store, they found the key to Movant's car in Gannon's pocket. Gannon explained to officers that Movant loaned him the car so he could go cash the check. Detective Fisher stated in his report that incidental to Gannon's arrest for forgery, he searched the vehicle and obtained several items. He further stated that in his experience, forgery suspects often have other similar forgery evidence in their cars.

Movant contends that his attorney should have moved to suppress the items seized from the car that were used against him at his trial. Although he mentions other items, Movant is most concerned about the Canadian passport with his name that was obtained. He

says that without that, the prosecution would not have discovered the passport applications that were also used against him. Movant argues that neither he nor Gannon consented to a search of the vehicle. He further argues that Gannon was nowhere near the vehicle when it was searched and that Detective Fisher seized items that had nothing to do with Gannon's alleged offense.

Respondent argues in response that a motion to suppress the items Movant complains about would not have been successful and the items were all properly admitted. Respondent cites that standard set forth in Arizona v. Gant, 129 S.Ct. 1710 (2009) regarding searches incident to a lawful arrest. In Gant, the Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 129 S.Ct. at 1723. Respondent argues that because Gannon was a recent occupant of the vehicle and because it was reasonable to believe the vehicle would contain further evidence of forgery, the search was lawful under Gant and a motion to suppress would have been denied.

The court agrees that a motion to suppress by Movant's counsel would have been unlikely to succeed. Although Gant was decided after Movant's trial, the decisions relied on in Gant, New York v. Belton, 453 U.S. 452 (1981), and Thornton v. United States, 541 U.S. 615 (2004), would likely have led the trial court to deny a motion to suppress the items seized from the vehicle. The court therefore finds that Movant has not shown that counsel's performance on this issue fell below an objective standard of reasonableness. Nor has he shown a reasonable probability that the result of the proceeding would have been different. The court will therefore recommend that ground one be denied.

**2.    Ground Two**

Movant next contends that his lawyer provided ineffective assistance when he stipulated that four of the trial exhibits, including the Canadian passport, were obtained from a black portfolio inside Movant's car. Plaintiff contends that the government would have

been unable to establish a foundation for how the exhibits were obtained without the stipulation.

Respondent argues that the prosecution would have been able to establish the necessary foundation by calling Detective Fisher as a witness. Respondent contends that counsel's decision to enter the stipulation was a tactical decision to prevent the detective and possibly other Phoenix police officers from taking the stand and offering extraneous, potentially prejudicial information about the state court forgery offenses. Because their testimony was needed only to establish foundation, counsel eliminated the risk of extraneous information by entering the stipulation. The trial court even recognized the potential risk of having any Phoenix police officers testify. Doc. 8 at 14.

The court finds that counsel's decision to enter the stipulation was a reasonable tactical choice. The foundational information would have been presented anyway and stipulating to it eliminated any risk of the foundation witnesses adding prejudicial information about the state court forgery offenses. Movant has not demonstrated that entering the stipulation constituted deficient performance by his lawyer. Nor has he shown that the result of the proceeding would have been different had his lawyer not entered the stipulation. The court will therefore recommend that ground two be denied.

### 3. Ground Three

Movant next contends that his lawyer provided ineffective assistance of counsel by failing to challenge Movant's arrest and detention by ICE agents in September 2007. Movant explains that after he was arrested by Phoenix police for forgery and theft of means of transportation on July 24, 2007, he was interviewed by a Maricopa County Sheriff's Office (MCSO) officer regarding his place of birth and citizenship. After the interview, an immigration hold was placed on Movant leaving him unable to post the bond set on the state court charges. Movant states that he was eventually allowed to post bond two months later, but just before his release from the county jail, he was taken into custody by ICE agents. Movant contends that he repeatedly asserted to immigration officials he was a United States citizen, born in the United States to parents who were also U.S. citizens. Eventually, Movant

was transported to the Eloy Detention Center, placed in removal proceedings, and ordered to appear before an Immigration Judge on October 31, 2007. His appearance at that hearing resulted in the convictions Movant is challenging here.

Movant argues that his lawyer should have challenged his arrest and detention by ICE agents in September 2007 because immigration officials had no reason to believe he was an alien in the United States illegally. He argues that absent the unlawful arrest and detention, he never would have been placed in removal proceedings or ordered to go before the Immigration Judge in October.

The record does not support Movant's claim. As Respondents point out, Movant told the MCSO officer following his arrest on state court charges that he was born in Sudbury, Canada and was a Canadian citizen. Doc. 8-1 at 1. The MCSO officer, who was specially trained to assist in enforcing federal immigration law, further testified that Movant also told him his parents were born in Canada. Doc. 8-1 at 8. Movant also stated he had a Canadian passport that was in the possession of a Phoenix detective. Id. Movant also told the officer his date of birth, height and weight. Doc. 8-1 at 9. Based on the information he received from Movant, the MCSO officer placed him on an immigration hold. Id. Finally, the officer testified he had never been to Ontario, Canada and had no familiarity with Sudbury. Doc. 8-1 at 10.

Thus, contrary to Movant's contention, immigration officials did have a basis to arrest and detain him in light of the information he provided to the MCSO officer. Movant disputes that he told the MCSO officer he was born in Canada and claims he told him he was born in Ontario, California and was an American citizen. To accept this version of events, however, the court would have to find that the MCSO officer made up the fact that Movant said he was born in Sudbury, a place about which the officer had no knowledge.

Based on what Movant's trial counsel knew would be the MCSO officer's testimony, along with other information that later verified Movant's statements to the officer, counsel had no basis, other than Movant's own self-serving statements, to challenge the legality of Movant's arrest and detention by ICE agents. Counsel's failure to do so does not constitute

deficient performance. Nor is there any reason to believe that raising such a challenge would have made any difference in the outcome. Accordingly, the court will recommend that ground three be denied.

### 4. Ground Four

Movant next contends that his lawyer provided ineffective assistance by failing to challenge the Immigration Court's jurisdiction over him. Here, Movant presents essentially the same arguments he raised in ground three. He claims that immigration officials had no basis to place him in removal proceedings and file a Notice to Appear requiring him to go before an Immigration Judge. For the same reasons set forth in ground three, the court finds that a challenge to the Immigration Court's jurisdiction over Movant would not have been successful given the information immigration officials had regarding Movant's citizenship. Movant has not demonstrated that his criminal defense lawyer's failure to challenge the Immigration Court's jurisdiction fell below an objective standard of reasonableness. Nor has he shown a reasonable probability that the result of the proceeding would have been different had his lawyer raised such a challenge. The court will therefore recommend that ground four be denied.

### 5. Ground Five

Movant alleges in ground five that his lawyer provided ineffective assistance by failing to "challenge the significance of the 'Certificate of Non-Existence of Record' ([E]xhibit 19)." Movant contends that this certificate was a declaration by the Department of Homeland Security that after searching its database, it was unable to locate a record for Movant. Movant asserts that an immigration officer testified at trial that this meant there had been no request for citizenship benefits by Movant.

Movant claims the certificate had no value in his case because as a U.S. citizen, which he claims he is, there would be no reason to request citizenship benefits and thus there would be no record for him. He further claims that prior to 2009, Canadian citizens did not need entry documents. Thus, if he was a Canadian citizen as the prosecution claimed, there would still be no record of him entering or remaining in the United States, or otherwise seeking

benefits. Movant therefore contends that the exhibit created the false impression he was an illegal alien and his lawyer should have moved to suppress it.

As Respondent argues, to prove a false claim of U.S. citizenship, the government had to establish Movant was not a U.S. citizen at the time he made the claim. Respondent contends that the certificate showing Movant never made an application for a benefit, such as a visa or permanent residency, was simply one piece of evidence to establish that element of the offense. Respondent claims the prosecution presented "a multitude of other evidence" to prove Movant committed the offense and that Movant has not shown that a challenge to the certificate would have changed the result. The court agrees. Movant does not even allege in his motion or his reply that the result of the proceeding would have been different if his lawyer had moved to suppress the certificate or otherwise challenged its importance. Accordingly, the court will recommend that ground five be denied.

**6. Ground Six**

Finally, Movant alleges that his lawyer provided ineffective assistance by failing to call a handwriting expert to refute the prosecution's expert. Movant states that at trial the prosecution's handwriting expert testified that the signature on the Canadian passport matched signatures known to have been written by Movant and that it was not a forgery. Movant contends that a defense handwriting expert could have explained "how difficult, or easy, forging the signature in question would have been for someone interested in doing so for the purpose of fraudulently obtaining such a document." Movant alleges that by hearing from the prosecution's expert only, the jury received only partial information about the authenticity of the signature on the passport.

Tellingly, Movant does not allege in his motion that his signature on the Canadian passport is a forgery and that a defense expert would have testified as such. Movant fails to allege in his motion or his reply that if his lawyer had retained a handwriting expert for the defense, the result of the proceeding would have been different. Thus, Movant has not presented a valid claim of ineffective assistance counsel. The court will therefore recommend that ground six be denied.

**C.     Evidentiary Hearing**

Movant contends in his reply that he is entitled to an evidentiary hearing in this matter. 28 U.S.C. § 2255 provides that a court shall grant a hearing to determine the issues "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." Here, the court finds that the motion, files and records of the case conclusively show Movant is not entitled to relief. As the above discussion demonstrates, Movant has not provided a sufficient showing to satisfy the Strickland standard for ineffective assistance. For these reasons, the court will recommend that Movant's request for an evidentiary hearing be denied.

**D.     Conclusion**

Having determined that all six grounds for relief should be denied, the court will recommend that the motion to vacate be denied in its entirety.

**IT IS THEREFORE RECOMMENDED:**

That Movant's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 1), and his request for an evidentiary hearing, be **denied**.

**IT IS FURTHER RECOMMENDED**:

That a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the

district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 3rd day of August, 2011.

_Edward C. Voss_
Edward C. Voss
United States Magistrate Judge